**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION**

**ALLIED WORLD INSURANCE
COMPANY, a New Hampshire
Corporation**                                                                                    **PLAINTIFF**

**v.**                                 **Case No. 4:17-cv-835-KGB**

**CMM MECHANICAL, LLC, an Arkansas
Limited Liability Company; CARY PARKS,
an individual; SUSAN PARKS, an individual;
MICHAEL S. BROOKS, an individual; THE
ESTATE OF ROBERT A. HALL, a probate
estate in Pulaski County, Arkansas,
BRANDON J. LAR, an individual, and
FIRST SECURITY BANK**                                                    **DEFENDANTS**

## OPINION AND ORDER

Before the Court is defendants Brandon J. Lar and First Security Bank's ("Moving Defendants") motion for summary judgment (Dkt. No. 40). Plaintiff Allied World Insurance Company ("Allied World") responded in opposition (Dkt. No. 46), and Moving Defendants replied (Dkt. No. 55). Separate defendant Michael S. Brooks also responded in opposition (Dkt. No. 49). For the following reasons, the Court denies Moving Defendants' motion for summary judgment (Dkt. No. 40).

### I.     Background

Unless otherwise noted, the following facts are taken from Moving Defendants' statement of undisputed material facts, Allied World's statement of undisputed material facts, and Allied World's response to Moving Defendants' statement of undisputed material facts (Dkt. Nos. 42, 47, 48). On December 15, 2017, Allied World filed a complaint against Mr. Brooks and other defendants (Dkt. No. 42, ¶ 1). In the complaint, Allied World alleges that Mr. Brooks is liable to Allied World based on an indemnity agreement that Allied World alleges Mr. Brooks signed on

December 14, 2015 (the "Indemnity Agreement") (*Id.*, ¶ 2).  Mr. Brooks' signature was notarized by Mr. Lar, an Arkansas notary, who was employed by First Security Bank on December 14, 2015 (*Id.*, ¶ 3).

On January 5, 2018, Mr. Brooks filed an answer to Allied World's complaint and asserted that he did not sign the Indemnity Agreement (*Id.*, ¶ 4).  Based on Mr. Brooks' assertion, Allied World filed an amended complaint bringing alternative claims against Mr. Lar for negligent notarization and against First Security Bank for vicarious liability because Mr. Lar notarized the document within the scope of his employment at First Security Bank (*Id.*, ¶¶ 5–6).

During a deposition, Mr. Brooks testified that he knew the signature on the Indemnity Agreement was not his because the letters "h" through "l" in "Michael" were not how he signs his name (*Id.,* ¶ 20).  Mr. Brooks also testified that the same signature might or might not be his but that he "just couldn't tell" (*Id.*, ¶ 21).  After the deposition, Mr. Brooks submitted a signed affidavit swearing that he did not sign the Indemnity Agreement (Dkt. No. 43-1).  In this affidavit, he claims that he had not seen the Indemnity Agreement before the default and therefore was unsure if he had unknowingly signed the document (*Id.*, ¶ 3).  He claims, however, that upon finally seeing the document he can confirm that he did not sign it (*Id.*).

James Keating, Allied World's Vice President of Surety Claims, testified during his deposition that Allied World had no evidence to support their claim that Mr. Brooks did not sign the agreement other than Mr. Brooks' own statements (Dkt. No. 40-1, at 5).  Mr. Keating stated, "[y]ou know, I guess the only evidence would be Mr. Brooks saying he didn't do it." (*Id.*, at 6).  He testified that he did not believe Mr. Brooks' assertions were valid (*Id.*).

Mr. Lar testified that he knows the signature in question was properly notarized; he knows Mr. Brooks appeared in person, presented a photo identification and signed the document in the

presence of Mr. Lar based upon the notary seal and practice of Mr. Lar (*Id.,* ¶ 17).  Mr. Lar claims that, while working at First Security Bank, he kept a notary log in which he recorded the information of everyone who signed documents that he notarized (Dkt. No. 48-1, at 2).  However, Mr. Lar has been unable to produce this log (*Id.*).  Moving Defendants claim that Allied World has no evidence that it intends to introduce to refute this evidence (Dkt. No. 42, ¶ 17).  Allied World denies this assertion (Dkt. No. 47, ¶ 17).

Allied World admits that it would not have sued either of the Moving Defendants if Mr. Brooks had not stated in his filings that he did not sign the Indemnity Agreement and that there is no other reason it sued Moving Defendants other than Mr. Brooks' denial of his signature on the Indemnity Agreement (Dkt. No. 47, ¶¶ 8-9).  Allied World also admits that, when it sued Moving Defendants, it believed that Mr. Brooks did indeed sign the Indemnity Agreement (*Id.*, ¶ 10).  However, Allied World claims that, pursuant to Federal Rule of Civil Procedure 8(a)(3), it is permitted to plead and pursue alternative claims against defendants in case the jury believes Mr. Brooks' testimony that he did not sign the Indemnity Agreement and determines that Mr. Lar notarized improperly Mr. Brooks' alleged signature without witnessing it or without confirming Mr. Brooks' identity (*Id.*, ¶¶ 8-10).

Moving Defendants allege that Allied World has no evidence that Mr. Lar failed to witness Mr. Brooks actually sign the Indemnity Agreement on December 14, 2015, or that Mr. Lar failed to receive and review proof of identification of Mr. Brooks at the time the Indemnity Agreement was signed and notarized (Dkt. No. 42, ¶¶ 12-13).  Moving Defendants also claim that Allied World has no evidence that Mr. Lar failed to exercise ordinary care under the circumstances in notarizing the signature of Mr. Brooks on the Indemnity Agreement (*Id.*, ¶ 14).  Allied World denies this assertion because Mr. Brooks swears that he did not sign the Indemnity Agreement

(Dkt. No. 47, ¶¶ 12-14).  Mr. Brooks also disputes Moving Defendants' assertion, and Mr. Brooks claims that his affidavit provides opposing evidence that needs to be evaluated for credibility by a trier of fact (Dkt. No. 50, ¶¶ 11-23).

## II.    Standard Of Review

Summary judgment is proper if the evidence, when viewed in the light most favorable to the nonmoving party, shows that there is no genuine issue of material fact in dispute and that the defendant is entitled to entry of judgment as a matter of law.  Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  An issue of fact is genuine when "a reasonable jury could return a verdict for the nonmoving party" on the question.  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).  "The mere existence of a factual dispute is insufficient alone to bar summary judgment; rather, the dispute must be outcome determinative under prevailing law."  *Holloway v. Pigman*, 884 F.2d 365, 366 (8th Cir. 1989).  However, parties opposing a summary judgment motion may not rest merely upon the allegations in their pleadings.  *Buford v. Tremayne*, 747 F.2d 445, 447 (8th Cir. 1984).  "The non-moving party cannot simply rest on mere denials or allegations in the pleadings; rather, the non-movant 'must set forth specific facts showing that there is a genuine issue for trial.'"  *Webb v. Lawrence County,* 144 F.3d 1131, 1134 (8th Cir. 1998) (quoting *Celotex Corp.* 477 U.S. at 323 (1986)).  "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge."  *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000) (quoting *Anderson*, 477 U.S. at 255).

### III.     Analysis

Moving Defendants contend that they are entitled to summary judgment because Allied World has no evidence to present at trial supporting its claim of negligence against Mr. Lar or First Security Bank (Dkt. No. 41, at 5).  They claim that Allied World has argued alternative claims but essentially must elect between these mutually exclusive, alterative claims at this stage of the litigation.  Moving Defendants claim Allied World has only produced evidence to show that Mr. Brooks signed the agreement and that, therefore, Moving Defendants should be granted summary judgment on Allied World's claims against them.  Allied World asserts that Mr. Brooks' sworn testimony that he did not execute the Indemnity Agreement upon which Mr. Lar notarized his alleged signature creates a genuine issue of material fact as to whether Mr. Lar breached his statutory obligation to witness the signing of the Indemnity Agreement and to obtain proof of Mr. Brooks' identity as the signer of the Indemnity Agreement (Dkt. No. 46, at 1–2).  The question before the Court then is whether Allied World can continue to proceed in this litigation asserting alternative claims and whether Allied World can rely on Mr. Brooks' testimony that he did not sign the Indemnity Agreement to create a genuine issue of material fact regarding whether Mr. Lar was negligent in order to survive the summary judgment stage of this litigation.

### A.     Negligence Legal Standard

Allied World alleges negligence against Mr. Lar and vicarious liability against First Security Bank (Dkt. No. 27).  Arkansas law dictates that "[i]n order to prove negligence, there must be a failure to exercise proper care in the performance of a legal duty which the defendant owed the plaintiff under the circumstances surrounding them."  *Shannon v. Wilson,* 947 S.W.2d 349, 356 (1997).  In Arkansas, the violation of a statute may be considered evidence of negligence. *Jackson v. Cadillac Cowboy, Inc.*, 986 S.W.2d 410, 415 (Ark. 1999).  The burden in a negligence

5

case is always on the party asserting the claim. *Yanmar Co., Ltd. v. Slater*, 386 S.W.3d 439 (Ark. 2012) (citing *Morehart v. Dillard Dep't Stores*, 908 S.W.2d 331 (Ark. 1995)).

Mr. Lar was a notary public at the time of the alleged signing and Arkansas Code Annotated § 21-14-111 provides that:

(a)     It is unlawful for any notary public to witness any signature on any instrument unless the notary public either:

(1)     Witnesses the signing of the instrument and personally knows the signer or is presented proof of the identity of the signer; or

(2)     Recognizes the signature of the signer by virtue of familiarity with the signature.

Here, Allied World has the burden of proving that Mr. Lar breached his duty pursuant to Arkansas Code Annotated § 21-14-111(a). Evidence that a defendant breached a statutory obligation "is evidence of negligence to be submitted to a jury" under Arkansas law. *Shannon*, 947 S.W.2d at 358.[1]

### B.     Mr. Brooks' Testimony

Allied World asserts that Mr. Brooks' sworn testimony is evidence that Mr. Lar breached his statutory obligation and constitutes sufficient evidence of Mr. Lar's alleged negligence to defeat summary judgment relative to Allied World's negligence claims against Moving Defendants (Dkt. No. 46, at 2). Moving Defendants argue that Allied World's use of Mr. Brooks' affidavit creates a sham issue of fact because it contradicts Allied World's earlier testimony on the

---

[1]     Moving Defendants cite duty, vicarious liability, and potential limits on recovery and proceed to assert that "[t]here are significant legal questions regarding these two claims [asserted against Mr. Lar and First Security Bank] that will not be addressed in" its motion (Dkt. No. 41, at 4). Because Moving Defendants put forth no arguments on these legal questions, the Court will not address or resolve these legal questions at this stage of the litigation.

matter (Dkt. No. 55, at 5).  They claim that the affidavit cannot be used to get past the summary judgment stage (*Id.*).  This Court disagrees.

The remedy of summary judgment "is a procedure of great value in eliminating the sham and frivolous case."  *Camfield Tires, Inc. v. Michelin Tire Corp.*, 719 F.2d 1361, 1365 (8th Cir. 1983).  Summary judgment may be granted where there is a sudden and unexplained revision of testimony that creates an issue of fact where none existed before.  *Wilson v. Westinghouse Elec. Corp.*, 838 F.2d 286, 289 (8th Cir. 1988).  The Eighth Circuit has explained that, "[t]he district courts should examine such issues with extreme care, and only in circumstances such as this where the conflicts between the deposition and affidavit raise only sham issues should summary judgment be granted."  *Camfield Tires, Inc.*, 719 F.2d at 1366.

Here, Moving Defendants contend that the deposition of Mr. Keating and the affidavit of Mr. Brooks contradict each other in such a way to create a sham issue of fact.  In his deposition, Mr. Keating stated, "[y]ou know, I guess the only evidence would be Mr. Brooks saying he didn't do it," and Mr. Keating testified during his deposition that he does not believe that the evidence is valid (Dkt. No. 40-1, at 5).  However, Allied World also relies on Mr. Brooks' statement that he did not sign the Indemnity Agreement in asserting Allied World's alternative claim that Mr. Lar was negligent.

This is an atypical example of an allegation of an affidavit being used to create a sham issue of fact.  Most instances that prompt the Court to explore the sham affidavit doctrine involve a party producing their own affidavit which contradicts their own prior statements.  Here, Moving Defendants allege that Allied World is using the affidavit of another to contradict its prior statements.

Moving Defendants rely on *Prosser v. Ross*, 70 F.3d 1005, 1008 (8th Cir. 1995), to support this theory.  In *Prosser*, an inmate initially stated that a guard ran away immediately when the inmate was attacked.  *Id.*  At the summary judgment stage, the inmate cited the testimony of another inmate saying the guard waited 30 seconds before running away.  *Id.*  The court held that the principle of a sham affidavit could be transferred when a party uses the testimony of another to contradict the party's own prior statements.  *Id.*  This Court finds several differences between the facts of *Prosser* and this case which lead the Court to conclude that this case merits a different outcome at this stage of the litigation.

In *Prosser*, the contradictory statements stemmed from an event of which the plaintiff had firsthand knowledge, namely an event in which he himself was attacked.  *Id.*  In this case, no one from Allied World was present for the alleged signing of the Indemnity Agreement.  The Court acknowledges that Mr. Keating stated that the only evidence Allied World has to support a claim that Mr. Brooks did not sign the Indemnity Agreement is Mr. Brooks' affidavit, and Allied World alleges nothing more at this point in the proceedings.  To refute Mr. Brooks' affidavit, Allied World must rely on the presence of a notary seal and the statements of Mr. Lar that he witnessed Mr. Brooks sign the document.  Allied World can hold opinions about which theory it gives more credence without having to eliminate an alternative claim against a party, especially under these circumstances where Allied World is confronted with contradicting testimony from witnesses it does not control regarding an event it did not witness.  Ultimately, the trier of fact should resolve the conflict between Mr. Brooks and Mr. Lar's testimony.

Further, in *Prosser*, the court stated that the testimony used to contradict the plaintiff's earlier assertions had several inaccuracies and contradictions and that this strengthened the decision to throw out the contradictory testimony as creating a sham issue of fact.  *Id.*  On the

record before the Court, Mr. Brooks' testimony does not suffice to invoke the sham affidavit doctrine. Mr. Brooks may have said that he could not tell if the signature was his at the deposition, but he also denied it being his during the same deposition and used the affidavit to clarify that he had not yet seen the document he was accused of signing. Courts have repeatedly allowed affidavits where "the affiant needs to explain portions of [his] deposition testimony that were unclear." *City of St. Joseph, Mo. v. Sw. Bell Tel.*, 439 F.3d 468, 476 (8th Cir. 2006). Mr. Brooks' use of the affidavit to clarify his deposition testimony, which occurred after Mr. Keating's deposition, further supports this Court's determination that the circumstances of this case do not create a sham issue of fact that the Court should be deciding as a matter of law at this stage of the litigation.

As stated earlier, courts must examine issues such as this with "extreme care," and only upon the creation of a "sham issue" is summary judgment appropriate. *Baker v. Silver Oak Senior Living Mgmt. Co.*, 581 F.3d 684, 690 (8th Cir. 2009) (quoting *Camfield Tires, Inc.*, 719 F.2d at 1366). There does not appear to be any sham issue introduced by the alleged conflict between Allied World's testimony and its reliance on Mr. Brooks' assertion that he did not sign the Indemnity Agreement. The core issue of Allied World's claims against Moving Defendants is whether Mr. Brooks actually signed the Indemnity Agreement. Mr. Brooks claims that he did not, and Mr. Brooks' assertion, if accepted as true by the trier of fact, establishes evidence sufficient to submit to the jury whether Mr. Lar notarized improperly a document. Furthermore, Mr. Lar has testified that he cannot produce his notary log from the day that Mr. Brooks allegedly signed the Indemnity Agreement (Dkt. No. 46, at 4).

The weight and credibility of this conflicting record evidence are not for the Court to decide at this stage. "Ambiguities and conflicts are generally matters for the jury to sort out," and the

issues in this case are ripe for the trier of fact to determine credibility.  *Wilson*, 838 F.2d at 289.

Summary judgment is permitted only when there is no genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  Whether Mr. Brooks signed the Indemnity Agreement, and thus whether Mr. Lar notarized properly the Indemnity Agreement, are significant and genuine issues of material fact that defeat Moving Defendants' motion for summary judgment.

With respect to Moving Defendants' argument that Federal Rule of Civil Procedure 8 permits pleading in the alternative but requires the pleading party to pick between mutually exclusive claims at this stage of the litigation, the Court rejects Moving Defendants' argument. Federal Rule of Civil Procedure 8(d)(2) provides that "[a] party may set out [two] or more statements of a claim . . . alternatively . . . either in a single count . . . or in separate ones.  If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient."  *Id.* Further, under Rule 8(d)(2), "a plaintiff may plead inconsistent theories of liability, and may even argue alternative claims to a jury."  *McNamara v. Picken*, 950 F. Supp. 2d 125, 128 (D.D.C. 2013); *see also Scott v. District of Columbia*, 101 F.3d 748, 753 (D.C. Cir. 1996) (providing that, under Fed. R. Civ. P. 8(d)(2), a plaintiff "could properly plead alternative theories of liability, regardless of whether such theories were consistent with one another" and "could properly argue alternative claims to the jury").  "Until an action has actually reached the point of entering a judgment, Rule 8 allows a plaintiff to explore alternative, mutually exclusive theories."  *West Side Transp. v. Cummins Inc.*, No. 19-CV-133-LRR 2020 WL 6072621, at *8 (N.D. Iowa Apr. 27, 2020) (quoting *Laurence v. Atzenhoffer Chevrolet*, 281 F. Supp. 2d 898, 900 (S.D. Tex. 2003)).

10

**IV.     Conclusion**

For these reasons, the Court denies Mr. Lar and First Security Bank's motion for summary

judgment (Dkt. No. 40).

It is so ordered this 20th day of November, 2020.

_Kristine G. Baker_

Kristine G. Baker
United States District Judge