**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**CENTRAL DIVISION**

**ALLIED WORLD INSURANCE**
**COMPANY, a New Hampshire**
**Corporation**                                                                                   **PLAINTIFF**

**v.**                                        **Case No. 4:17-cv-835-KGB**

**CMM MECHANICAL, LLC, an Arkansas**
**Limited Liability Company; CARY PARKS,**
**an individual; SUSAN PARKS, an individual;**
**MICHAEL S. BROOKS, an individual; THE**
**ESTATE OF ROBERT A. HALL, a probate**
**estate in Pulaski County, Arkansas,**
**BRANDON J. LAR, an individual, and**
**FIRST SECURITY BANK**                                                          **DEFENDANTS**

## OPINION AND ORDER

Before the Court is separate defendant Michael Brooks' motion for partial summary judgement (Dkt. No. 43). Plaintiff Allied World Insurance Company ("Allied World") responded in opposition (Dkt. No. 51), and Mr. Brooks replied (Dkt. No. 58). Mr. Brooks asserts certain of these same arguments in a pending motion *in limine* (Dkt. No. 69). For the following reasons, the Court denies Mr. Brooks' motion for partial summary judgment and his motion *in limine* (Dkt. Nos. 43, 69).

### I.    Background

Unless otherwise noted, the following facts are taken from Mr. Brooks' statement of undisputed material facts, Allied World's statement of undisputed material facts, and Allied World's response to Mr. Books' statement of undisputed material facts (Dkt. Nos. 45, 52, 53). Allied World filed an amended complaint in this action against Mr. Brooks on January 30, 2019 (Dkt. No. 27). The action alleges $875,000.00 in damages owed by Mr. Brooks jointly and severally with other defendants (*Id.*, ¶ 34). The action resulted from a Performance and Payment

Bond that was executed on February 23, 2017, between Allied World and defendant CMM Mechanical, LLC ("CMM"), in favor of the Arkansas Department of Finance and Administration Division of Building Authority ("ADFA Building Authority") (Dkt. No. 45, ¶ 2).  On September 27, 2017, the ADFA Building Authority notified Allied World and CMM that it was giving a 10-day notice of termination due to lack of prosecution of work on the bonded building project (*Id.*, ¶ 3).  The ADFA Building Authority declared CMM to be in default under the bonded contract and asserted a claim against Allied World (Dkt. No. 52, ¶ 2).

Mr. Brooks claims that, on September 28, 2017, he contacted Allied World, through counsel, to inform it that he "ha[d] the people and an alternate [m]echanical company to resume completion of the job but action [was] needed quickly or there [would] be a runaway claim."  (Dkt. No. 45, ¶ 4).  On October 24, 2017, Allied World, through counsel, acknowledged that Mr. Brooks wanted to be included in the completion effort and stated that, "if he [could] come in as a low bidder, [it] would take a long hard look at him."  (*Id.*, ¶ 5).  Mr. Brooks later learned that Allied World and its consultant invited five parties to submit bids on one small part of the remaining job, and that none of those parties invited to submit bids were Mr. Brooks (*Id.*, ¶ 6).

Allied World contends that James Keating, Allied World's Vice President of Surety Claims, began to try and mitigate Allied World's damages under the bond when the ADFA Building Authority asserted the claim against Allied World (Dkt. No. 52, ¶ 3).  According to Allied World, CMM's default under the bonded contract constituted an "event of default" under section 5.2(1) of the parties' indemnity agreement that triggered Allied World's right, in its sole discretion, to take over and arrange for the completion of the bonded contract, which is what Allied World did (*Id.*, ¶ 4).  Allied World claims that it took actions necessary and expedient under the circumstances and that those actions were intended to mitigate its damages, including, but not

limited to, its decision to arrange for the completion of the bonded contract through a different contractor (*Id.*, ¶ 5).

All claims brought by Allied World against Mr. Brooks stem from the notarized indemnity agreement allegedly signed by all defendants (Dkt. No. 45, ¶ 8).  Mr. Brooks denies signing the indemnity agreement (Dkt. No. 43, Ex. 1).  The notary, Brandon Lar, and his employer at the time of notarization, First Security Bank, are also defendants to this action and have filed a separate motion for summary judgment (Dkt. No. 40).  During his deposition, Mr. Lar confirmed that he notarized the indemnity agreement and claims that he personally witnessed Mr. Brooks sign the document (Dkt. No. 53, Ex. 1 pp. 37–38).  The original indemnity agreement no longer exists, and only duplicates remain (Dkt. No. 45, ¶ 9).  Mr. Brooks claims that he is entitled to summary judgment because Allied World cannot produce an original copy of the indemnity agreement (Dkt. No. 44, at 5).  Mr. Books also claims that he is entitled to summary judgment because Allied World failed to mitigate its damages (*Id.*, at 7).

## II.     Standard Of Review

In determining whether summary judgment should issue, the Court must view the facts and inferences from the facts in the light most favorable to the nonmoving party.  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Woods v. DaimlerChrysler Corp.*, 409 F.3d 984, 990 (8th Cir. 2005).  The moving party has the burden to establish both the absence of a genuine issue of material fact and that it is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  "The party opposing summary judgment may not rest on the allegations in its pleadings; it must 'set forth specific facts showing that there is a genuine issue for trial.'"  *United of Omaha Life Ins. Co. v. Honea*, 458 F.3d 788, 791 (8th Cir. 2006) (quoting

Fed.R.Civ.P. 56(e)).  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  *Hitt v. Harsco Corp.*, 356 F.3d 920, 923 (8th Cir. 2004) (quoting *Anderson*, 477 U.S. at 248).  An issue of fact is genuine when "a reasonable jury could return a verdict for the nonmoving party" on the question. *Anderson*, 477 U.S. at 248; *Woods*, 409 F.3d at 990.  "Mere allegations, unsupported by specific facts or evidence beyond the nonmoving party's own conclusions, are insufficient to withstand a motion for summary judgment."  *Thomas v. Corwin*, 483 F.3d 516, 526–27 (8th Cir. 2007).

### III. Analysis

#### A. Duplicate Document

Mr. Brooks argues that Allied World possesses only a photocopy of the original indemnity agreement thus violating the best evidence rule, Federal Rule of Evidence 1002 (Dkt. No. 44).  He further argues that a copy of the indemnity Agreement is inadmissible because there is a genuine question of fact as to the authenticity of the original because he alleges that his signature has been forged (*Id.*).

The lack of an original signed Indemnity Agreement complicates the evidentiary issues. Federal Rule of Evidence 1002 states that "[a]n original writing, recording, or photograph is required in order to prove its content unless these rules or a federal statute provides otherwise." There is clearly no original document available in the case at hand, as Allied World has admitted that only copies of the agreement exist (Dkt. No. 43, Ex. 5).  Thus, the Court turns to other rules to determine whether an exception applies.

"A duplicate is admissible to the same extent as the original unless a genuine question is raised about the original's authenticity or circumstances make it unfair to admit the duplicate." Fed. R. Evid. 1003.  The parties disagree as to whether the photocopied agreement can be admitted

into evidence under Federal Rule of Evidence 1003.  The purpose of an original document requirement is to "prevent inaccuracy and fraud when attempting to prove the contents of a writing." *United States v. Buchanan,* 604 F.3d 517, 523-24 (8th Cir. 2010) (quoting *United States v. Yamin*, 868 F.2d 130, 134 (5th Cir. 1989)).  The original document "may contain, and the copy may lack, such features . . . as may afford the opponent valuable means of objecting to admissibility."  6 Joseph M. McLaughlin, Weinstein's Federal Evidence § 103.03[4] (2008).

In this case, there is a question of authenticity.  Mr. Brooks' sworn statement claiming that he did not sign the Indemnity Agreement merits the Court's consideration and raises a question of authenticity (Dkt. No. 43, Ex. 1).  However, Mr. Brooks does not contend that the copy of the Indemnity Agreement introduced in the complaint is materially different than the original in any way.  He argues only that he never signed the original document, not that the document was altered in any way after he encountered it.  Some courts have held that documents which are shown to be accurate reproductions of the originals are duplicate originals, meaning that if the admitted photocopy accurately portrays the original document then it could be admissible.  *See United States v. Wagoner*, 713 F.2d 1371, 1377 (8th Cir. 1983).

However, whether there is a genuine question of authenticity does not have to be addressed here because Federal Rule of Evidence 1004(a) allows the photocopied indemnity agreement to be admitted.  Federal Rule of Evidence 1004(a) states that "[a]n original is not required and other evidence of the content of a writing, recording, or photograph is admissible if all the originals are lost or destroyed, and not by the proponent acting in bad faith."  Fed. R. Evid. 1004(a).  Losing or destroying the original document as a result of negligence is not considered to be in bad faith.  *See Estate of Gryder v. C.I.R.*, 705 F.2d 336, 338 (8th Cir. 1983).  If the original has been lost or destroyed, the proponent may "[p]rove the contents of a writing by any secondary evidence."

*United States v. Gerhart*, 538 F.2d 807, 809 (8th. Cir. 1976); *see also United States v. Billingsley*, 160 F.3d 502, 508 n. 2 (8th Cir. 1998); *United States v. Rettinger*, 2006 WL 3193701, *4 (D.N.D. Nov. 1, 2006).  There is no requirement for clear and convincing evidence of authenticity and accuracy for a copy to be admitted.  *Gerhart*, 538 F.2d at 809.

For example, in *Gerhart*, photocopied checks were allowed into evidence after two detectives, who had seen both the originals and the copies, testified that the copies "accurately reproduced the original photocopy."  *Gerhart*, 538 F.2d at 809; *see also United States v. Standing Soldier*, 538 F.2d 196, 203 (8th Cir. 1976) (holding that a copied note could be admitted into evidence based on the testimony of someone who had read the original before it was lost).  Similarly, in *Estate of Gryder*, the court held that secondary evidence could be used to prove the contents of corporate records after they had been negligently destroyed, "but not in bad faith."  705 F.2d at 338.

For this exception to apply, the Court first must determine whether the original Indemnity Agreement was lost or destroyed in bad faith.  The record evidence before the Court shows that Allied World openly admits that the original copy of the Indemnity Agreement no longer exists, and Mr. Brooks has alleged no wrongdoing on the part of Allied World in its failure to produce the original.  Therefore, based on the record evidence before it, the Court concludes that the original Indemnity Agreement was not lost or destroyed in bad faith because there is no allegation of wrongdoing before the Court and because Allied World admits that only copies presently exist.

The next step is to evaluate the secondary evidence that can be used to prove the contents of the original Indemnity Agreement through the copy.  Notary Mr. Lar testified at his deposition that he personally witnessed Mr. Brooks sign the copy of the original Indemnity Agreement and placed the seal on the documents afterward (Dkt. No. 51, Ex. 1).  Like in *Gerhart*, where trained

detectives were allowed to testify as to the contents of a personal check, here, a certified Arkansas notary testified as to the contents of a document with his seal on it. *See* 538 F.2d at 809. The parties will be allowed to argue over the weight that should be given to Mr. Lar's testimony at a later stage in the proceedings, and that decision should ultimately be left to the trier of fact. At this stage, there exists only an admissibility issue as to the copy of the Indemnity Agreement. The testimony of the notary Mr. Lar that he saw Mr. Brooks sign the original Indemnity Agreement is sufficient secondary evidence to prove the contents of the copy for the purposes of denying summary judgment. The Court has reviewed and is unpersuaded by the authorities cited by Mr. Brooks in his reply (Dkt. No. 58). Accordingly, the Court denies Mr. Brooks' motion for summary judgment to the extent that he claims that he is entitled to summary judgment because Allied World does not have an original copy of the parties' Indemnity Agreement. Further, the Court also denies Mr. Brooks' motion *in limine* which relies upon essentially these same arguments (Dkt. No. 69).

### B.     Failure To Mitigate Damages

Mr. Brooks also alleges that he is entitled to summary judgment because Allied World failed to mitigate its damages by ignoring his requests to complete the bonded job and thus prevent a loss. Failure to mitigate damages is an affirmative defense under New York state law, which the parties agree governs the Indemnity Agreement. Allied World maintains that, under the Indemnity Agreement allegedly signed by Mr. Brooks, he would have to overcome a *prima facie* entitlement to losses and prove bad faith. This Court agrees with Allied World's assessment and finds that, on the record evidence before the Court, there are genuine issues of material fact in dispute as to Allied World's alleged bad faith that preclude this Court from granting summary judgment in favor of Mr. Brooks on this point.

It is a rule of broad acceptance that "[n]o recovery may be had for losses which the person injured might have prevented by reasonable efforts and expenditures." *Wilmot v. State*, 297 N.E.2d 90, 92 (N.Y. 1973).   Under New York law, "[i]t is axiomatic that an indemnity contract is interpreted to effectuate the intention of the parties as expressed in the unequivocal language of the contract."  *Gibbs-Alfano v. Burton*, 281 F.3d 12, 19 (2d Cir. 2002).  New York courts have held that, pursuant to an indemnity agreement such as that signed by the defendants, "the surety is entitled to indemnification upon proof of payment, unless payment was made in bad faith[.]"  *Lee v. T.F. DeMilo Corp.*, 29 A.D.3d 867, 868 (N.Y. App. Div. 2006) (quotation omitted).  "Absent bad faith, fraud or extravagance, the surety is entitled to pay the actual costs incurred in completing the construction project and then be provided indemnification pursuant to the agreement."  *First Nat. Ins. Co. of America v. Joseph R. Wunderlich, Inc.*, 358 F. Supp. 2d 44, 52 (N.D.N.Y. 2004).

The Indemnity Agreement allegedly signed by Mr. Brooks provides Allied World with a great degree of control when a default occurs.  Here, there is no allegation by Mr. Brooks that CMM did not default, thus triggering the Indemnity Agreement.  Section 5.3 of the Indemnity Agreement states that, if an event of default occurs, "Surety will have the option in its sole discretion, and Principal and Indemnitors hereby authorize Surety, to take possession of any part or all of the work under any contract or contracts covered by any Bond."  (Dkt. No. 54, ¶ 2, Ex. 1).  Other courts have held that, in contracts such as the one found here, "sureties are provided discretion and latitude to take whatever action necessary to settle claims and to complete the work at hand."  *First Nat. Ins. Co.* 358 F. Supp. 2d at 52 (citing *Gen. Accident Ins. v. Merritt-Meridian*, 975 F.Supp. 511, 516 (S.D.N.Y. 1997)).  Therefore, Allied World had "sole discretion" to take control over any incomplete work and was entitled to make any decisions necessary to complete the work, including inviting and selecting new bidders.

Section 4.3 of the Indemnity Agreement allows Allied World to charge for any disbursements made in good faith "under the belief that it is, or was, or might be liable for the sums and amounts so disbursed or that it was necessary or expedient to make such disbursements, whether or not such liability, necessity or expediency existed."  (Dkt. No. 54, ¶ 2, Ex. 1).  Mr. Brooks alleges that Allied World refused to let him complete the job after the default occurred, even when offered several times, and that he was not extended a bid invitation (Dkt. No. 45, ¶ 4). Mr. Brooks argues that this constitutes a failure to mitigate damages.  Mr. Brooks only provides a conclusory affidavit, which is insufficient to prove bad faith of any kind on the part of Allied World.  *See Int'l Fidelity Ins. Co. v. Spadafina*, 192 A.D.2d 637, 639 (N.Y. App. Div. 1993).

Mr. Brooks has offered no evidence to support his allegation of a failure to mitigate other than his conclusory affidavit.  He admitted to having no knowledge of any mitigation efforts that Allied World undertook and did not accuse Allied World of acting in bad faith.  Allied World does not have to take extraordinary measures to mitigate damages for the benefit of Mr. Brooks; Allied World is only required to exercise diligence and practical care.  *See U.S. Bank Nat. Ass'n v. Ables & Hall Builders*, 696 F. Supp. 2d 428, 441 (S.D.N.Y. 2010).  Allied World had no obligation to take Mr. Brooks at his word that he could complete the job.  Allied World's only obligation was to take whatever reasonable actions it could to minimize its damages.  *See Air Et Chaleur, S.A. v. Janeway*, 757 F.2d 489, 494 (2d Cir. 1985).  Mr. Brooks provides no record evidence to support an allegation that Allied World did not act reasonably or in good faith.  Therefore, the Court denies Mr. Brooks' motion to the extent that he claims that he is entitled to summary judgment entered in his favor because Allied World failed to mitigate its damages.

**IV.     Conclusion**

For the reasons stated above, the Court denies Mr. Brooks' motion for partial summary judgment (Dkt. No. 43).  The Court also denies Mr. Brooks' pending motion *in limine* (Dkt. No. 69).

It is so ordered this 20th day of November, 2020.

_____

Kristine G. Baker
United States District Judge